UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                            :
JAMES KELLY,                                :     CASE NO. 1:07-CV-919
                                            :
      Plaintiff,                          :
                                            :
vs.                                         :     OPINION & ORDER
                                            :     [Resolving Doc. Nos. 31, 55, 56]
MONTGOMERY LYNCH &                          :
ASSOCIATES, INC.,                           :
                                            :
      Defendant.                          :
                                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Before this Court are a motion for judgment on the pleadings filed by Defendant Montgomery Lynch & Associates, Inc. ("Montgomery Lynch"), a motion for summary judgment filed by the Defendant, and a motion for partial summary judgment filed by Plaintiff James Kelly ("Kelly"). [Docs. 31, 55, 56.] For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** all three motions.

### I. Background

      On December 1, 2006, Michael Thomas ("Thomas"), a debt collector for Defendant Montgomery Lynch, received permission from Plaintiff Kelly to obtain five postdated checks, each in the amount of $55, to pay off medical bills that the Plaintiff owed to the North Ohio Heart Center, Inc. ("NOHC"). [Thomas Aff., Doc. 55-2 at 1.] The Defendant is a debt collector for NOHC. [Edelman Dep., Doc. 56-2 at 54-55.] The Defendant issued checks on the Plaintiff's behalf in December 2006 and January 2007. [Thomas Dep., Doc. 66-6 at 18.] For each $55 check, $50 was

Case No. 1:07-CV-919
Gwin, J.

sent to NOHC to pay down the medical debt and $5 was retained by the Defendant as a check deposit fee. [Edelman Dep., Doc. 66-8 at 38-41.]

On February 1, 2007, National City Bank dishonored one of the Plaintiff's checks, a check prepared by the Defendant. [Thomas Aff., Doc. 55-2 at 1.] On February 10, 2007, the Defendant instructed its third party service provider, Dantom, Inc., to send a letter to the Plaintiff regarding this bounced check. [Thomas Dep., Doc. 66-6 at 48, 53.] The letter, attached to the complaint (hereinafter, "the Exhibit A letter"), was sent on February 13, 2007 and reads as follows:

> Pursuant to Ohio Code Sections 2307.60 and 2307.61(B), please be advised of the following:
>
> You have apparently committed a violation of Ohio revised Code Section 2913.11 "Passing Bad Checks" by passing a check dated 10/18/04 in the amount of $199.46 which includes $25.00 service charge, regarding our client. This check was dishonored by your bank.
>
> You could be criminally prosecuted in relation to the passing bad check charge which you have allegedly committed.
>
> We are prepared to take whatever steps necessary to redeem this amount. Pursuant to the prosecution office, you have 10 (ten) days after receiving this notice to make this check good by mailing a money order or certified check in the amount of $199.46 to this office.
>
> Time is of the essence. Your immediate attention and cooperation is advised.
>
> This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.
>
> Very truly yours,
> ***Montgomery Lynch & Associates***
> Ask for Ext. 16
>
> **Notice**
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy

Case No. 1:07-CV-919
Gwin, J.

> of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

[Doc. 1-1.]

On February 13, 2007, the Plaintiff authorized an $85 credit card payment by phone to satisfy the debt. [Thomas Dep., Doc. 66-6 at 54.] $50 of this payment went to NOHC for the medical debt and $35 went to the Defendant. [Edelman Dep., Doc. 66-8 at 38-41.] Of the $35 that the Defendant retained, the Defendant classified $30 as a service charge and $5 as a check fee. *Id.*

On March 29, 2007, Plaintiff Kelly filed this action on behalf of himself and all similarly situated persons against Defendant Montgomery Lynch. [Doc. 1.] The complaint alleges numerous violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code. § 1345.01, *et seq.*, arising from the collection letter that the Defendant sent to the Plaintiff. [Doc. 1-1.] On December 19, 2007, this Court granted the Plaintiff's motion for class certification as to similarly situated individuals residing in Ohio who received the Exhibit A letter from the Defendant. [Doc. 50.]

On November 30, 2007, the Defendant filed the instant motion for judgment on the pleadings.[1] [Doc. 31.] On January 7, 2008, the Defendant also filed a summary judgment motion. [Doc. 55.] On February 3, 2008, the Plaintiff opposed the motion. [Doc. 71.] The Defendant replied in support of its motion for summary judgment on February 11, 2008. [Doc. 76.]

On January 7, 2008, Plaintiff Kelly filed a motion for partial summary judgment. [Doc. 56.]

---

[1] The Defendant's motion for judgment on the pleadings must be treated as a summary judgment motion under Rule 56 because it requires the Court to consider evidence, such as the February 2007 bounced check, outside the pleadings. Fed. R. Civ. P. 12(d). Because that motion raises the same arguments as the Defendant's later-filed summary judgment motion, the Court will treat the Defendant's filings as a consolidated summary judgment motion.

Case No. 1:07-CV-919
Gwin, J.

The Defendant opposed the motion on January 21, 2008. [Doc. 59.] On January 30, 2008, the Plaintiff replied in support of his motion. [Doc. 66.]

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws

Case No. 1:07-CV-919
Gwin, J.

all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); see also *Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Discussion

#### *A. The Applicability of the Fair Debt Collection Practices Act (FDCPA)*

The FDCPA seeks to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Defendant Montgomery Lynch argues that the Fair Debt Collection Practices Act does not apply to this case and that this Court thus lacks subject matter jurisdiction. The Defendant says that the dishonored check in this case does not constitute a "debt" under the FDCPA because passing a bad check is a criminal act in Ohio and claims arising out of an alleged theft should not be construed as debts under the statute. The Defendant also argues that it is not a "debt collector" under the FDCPA. This Court disagrees.

The FDCPA broadly defines "debts" as:

any obligation or alleged obligation of a consumer to pay money arising out of a

Case No. 1:07-CV-919
Gwin, J.

> transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

The debt at issue in this case involves financial expenses incurred by Plaintiff Kelly in exchange for medical services rendered by the North Ohio Health Center ("NOHC"). Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA. While the Exhibit A letter on its face attempts to collect on a bounced check, the true debts at issue are the medical bills owed by Plaintiff Kelly to NOHC. Numerous courts of appeals have found that the underlying monetary obligation to which dishonored checks are intended are "debts" under the FDCPA and that attempts to collect on bounced checks constitute debt collection under the statute. *See Broadnax v. Greene Credit Service,* 106 F.3d 400 (6th Cir. 1997) (table); *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1325 (7th Cir. 1997); *Charles v. Lundgren & Assocs., P.C.,* 119 F.3d 739, 742 (9th Cir. 1997).

To be liable under the FDCPA, a defendant must be a "debt collector" as defined in §1692a(6). That section defines a "debt collector" as any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The plaintiff must prove that the defendant is a debt collector. *See Goldstein v. Hutton, Ingram, Yusek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 60 (2nd Cir. 2004). Here, the dishonored check was issued to Defendant Montgomery Lynch and thus the Defendant argues that its efforts to collect on that check were on behalf of Montgomery Lynch itself, not on behalf of others.

In this case, Plaintiff Kelly owed money in exchange for medical services that he received from

Case No. 1:07-CV-919
Gwin, J.

the North Ohio Heart Center. Despite the fact that the bounced check at issue in this case was to the Defendant, and not to NOHC directly, the Exhibit A letter explicitly states that the letter is in regards to a bounced check "regarding our client," and states that the "client" is the North Ohio Heart Center. [Doc. 1-1.] Further, the letter says, "This communication is from a debt collector. This is an attempt to collect a debt." *Id.* David Edelman ("Edelman"), the owner and president of Defendant Montgomery Lynch, also testified that the company regularly collects debts for NOHC. [Edelman Dep., Doc. 56-2 at 54-55.]

This Court concludes that the Defendant is a debt collector as defined under the FDCPA.

*B. The Plaintiff's FDCPA Claims*

The Sixth Circuit has instructed that courts must analyze any alleged FDCPA violations through the lens of the "least sophisticated consumer." *Gionis v. Javitch, Block, Rathbone, LLP,* 238 Fed. Appx. 24, 28 (6th Cir. 2007) (citing *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1029 (6th Cir. 1992)). The least sophisticated consumer test "serves a dual purpose: 'it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.'" *Id.* (internal citation omitted). The least sophisticated consumer standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.,* 167 F.3d 1052, 1054 (6th Cir. 1999) (internal quotation omitted). A single violation of the Act can establish civil liability. See 15 U.S.C. § 1692k; *Herbert v. Monterey Fin. Servs., Inc.*, 863 F. Supp. 76, 80 (D. Conn. 1994).

*1. § 1692e(2)(A): False Representation of the Character, Amount, or Legal Status of the Debt*

Plaintiff Kelly says that the Defendant's use of the Exhibit A letter violates § 1692e(2)(A) of

-7-

Case No. 1:07-CV-919
Gwin, J.

the FDCPA because the letter falsely represents the character, legal status, or amount of the debt owed by adding a $25 bounced check service charge to the Plaintiff's debt. The Plaintiff asserts that the Defendant could not assess this $25 civil penalty because the Plaintiff did not have a "purpose to defraud" and did not commit a crime.

Ohio law provides, "If a collection agency has been designated to collect on a check . . . that has been returned or dishonored for any reason, the collection agency may charge and receive check collection charges of not more than thirty dollars or ten per cent of the face amount of the instrument, whichever is greater . . ." Ohio Rev. Code § 1319.16(A). A debt collector may thus assess a $25 service charge when a debtor issues a check that is dishonored *for any reason*. This civil statute does not require that the debtor have had an intent to defraud in order to be penalized for this amount.

The Defendant's assessment of the $25 service charge against Plaintiff Kelly thus did not falsely represent the character, amount, or legal status of the debt under § 1692(e)(2)(A) of the FDCPA and the Court grants summary judgment to the Defendant on this claim.

*2. § 1692e(5): Threatening Action That Cannot Legally Be Taken or is Not Intended to be Taken and § 1692e(7): Falsely Representing That Consumer Committed A Crime*

Plaintiff Kelly also asserts that the Defendant's use of the Exhibit A letter violates the FDCPA by threatening to take legal action against the Plaintiff that it never intended and in fact could not legally take. § 1692e provides, in relevant part, that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" such as a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e. The FDCPA also prohibits debt collectors from engaging in the "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the

-8-

Case No. 1:07-CV-919
Gwin, J.

consumer." 15 U.S.C. § 1692e(7).

In the present case, the February 13, 2007 letter that the Defendant mailed to Plaintiff Kelly stated, in relevant part, as follows:

> You have apparently committed a violation of Ohio revised Code Section 2913.11 "Passing Bad Checks"...You could be criminally prosecuted in relation to the passing bad check charge which you have allegedly committed. We are prepared to take whatever steps necessary to redeem this amount. Pursuant to the prosecution office, you have 10 (ten) days after receiving this notice to make this check good... Time is of the essence. Your immediate attention and cooperation is advised.

[Doc. 1-1.]

The Defendant argues that the Exhibit A letter merely states that the Plaintiff "could" be prosecuted and asserts that this was a permissible attempt to secure payment from a debtor. This Court finds that the Defendant's warning that "[y]ou could be criminally prosecuted" in connection with its statement that "[w]e are prepared to take whatever steps necessary" shows an intent to bring criminal charges against Plaintiff Kelly and other recipients of the Exhibit A letter. Further, this threat is enhanced by the Defendant's statement, "*Pursuant to the prosecution office,* you have 10 (ten) days after receiving this notice to make this check good . . ." [Doc. 1-1 (emphasis added).] This statement implies that the Defendant had already contacted the county prosecutor's office or its own legal department as to the criminality of the debtor's non-compliance at the time that it mailed the letter.

The evidence indicates, however, that Defendant Montgomery Lynch does not have an in-house legal department. [Edelman Dep., Doc. 56-2 at 106.] The Defendant has never brought criminal charges against debtors that owe money to its clients and has rarely initiated civil lawsuits. *Id.* at 105-06, 120-21; Ianni Dep., Doc. 66-4 at 71-72. The Defendant did not contact any

Case No. 1:07-CV-919
Gwin, J.

prosecutor's office regarding the alleged crime. [Edelman Dep., Doc. 56-2 at 102-03. ] The Defendant thus did not intend to take, and in fact never initiated, legal action against Plaintiff Kelly in this matter.

This Court also finds that the Exhibit A letter falsely represents that Plaintiff Kelly committed a crime. The Exhibit A letter, written in February 2007, threatens criminal prosecution for an October 2004 debt, but a debtor cannot be criminally prosecuted for passing a bad check more than two years after the check was issued. Ohio Rev. Code § 2901.13.[2/]

Further, it appears that the Defendant itself may have been responsible for the bounced check because it incorrectly transposed Plaintiff Kelly's account numbers when it prepared the electronic check. [Doc. 34-2.] The dishonored check is actually stamped with the words "Account # Not On File." *Id.* Finally, the Court notes that, even if Plaintiff Kelly was responsible for passing a bad check due to insufficient funds, he could not be criminally prosecuted under Ohio law because he satisfied his debt within ten days of receiving notice that his check had been dishonored. [Doc. 56-2 at 40-41.] Ohio Rev. Code § 2913.11(C)(2).

The Court therefore concludes that the Exhibit A letter used false and misleading means to collect a debt by threatening legal action that was not intended to be taken and could not legally be

---

[2/] In the Exhibit A letter, the Defendant states that the Plaintiff passed a bad check in the amount of $199.46 on October 18, 2004. [Doc. 1-1.] After conducting discovery in this case, however, the Defendant found evidence that the bounced check was actually in the amount of $55 and dated February 1, 2007. [Doc. 34-2.] The Defendant thus argues that the Plaintiff's arguments as to the timeliness of the debt collection fail to state a claim upon which relief can be granted because its collection efforts were timely under Ohio law.

For purposes of deciding these cross-motions for summary judgment, the Court must rely on the date and amount of the debt as stated in the Exhibit A letter. Evaluating the letter under the least sophisticated consumer standard, a consumer would easily be led to believe that the Defendant was trying to collect on an October 2004 debt.

Further, it is eminently possible that Plaintiff Kelly owed two separate debts to the Defendant, one from October 2004 and another from February 2007, because the Defendant has tried to collect money from the Plaintiff on behalf of NOHC as far back as 2004. [Kelly Dep., Doc. 59-1 at 31-32, 63-64.]

Case No. 1:07-CV-919
Gwin, J.

taken in violation of § 1692e(5) of the Fair Debt Collection Practices Act, and by falsely representing that the consumer committed a crime under § 1692e(7). The Court thus grants summary judgment to the Plaintiff on both claims.

*3. § 1692f(1): Prohibition Against Collection of Any Amount Unless Authorized By Agreement*

The FDCPA also prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Here, Plaintiff Kelly says that the Defendant has a standard practice of assessing a $5 service charge for any check-by-phone payments. The Plaintiff says that this $5 fee is not authorized by Ohio law or by any agreement between the Plaintiff and the North Ohio Heart Center. In response, the Defendant says that it informed Plaintiff Kelly of the $5 surcharge for pay-by-phone transactions and that the Plaintiff verbally authorized such a fee. [Edelman Dep., Doc. 59-6 at 117.]

The Court notes at the outset that the Plaintiff's claim regarding the $5 pay-by-phone fee is a claim that is unique to Plaintiff Kelly. In this case, the Court has certified two classes whose members are defined by their receipt of the Exhibit A letter and not necessarily by the fact that they had to pay an extra $5 fee to make a payment by telephone. The Court has no evidence before it that any of the other class members were assessed such a fee.

As for Plaintiff Kelly, the Court finds that a genuine issue of material fact exists as to the Plaintiff's claim that the $5 check-by-phone fee violates the FDCPA. A debt collector cannot attempt to collect a fee unless it is authorized by agreement or allowed by law. 15 U.S.C. § 1692f(1). The Defendant claims that the telecheck fee is permitted by Ohio law, but cites no applicable statute or

-11-

Case No. 1:07-CV-919
Gwin, J.

contract between the parties.[3/] Further, a genuine issue of material fact exists as to whether Plaintiff Kelly himself authorized the fee because the Defendant says that the Plaintiff gave them permission to charge the fee over the telephone, but the Plaintiff denies that this authorization occurred. [Edelman Dep., Doc. 59-6 at 117 ; Pl. Reply, Doc. 66 at 13-14.]

Accordingly, the Court must deny summary judgment to both parties on the issue as to whether the Defendant wrongfully attempted to collect this fee under 15 U.S.C. § 1692f(1).

*4. § 1692e(10): False Representations or Deceptive Means to Collect Debt*

The Plaintiff says that the Exhibit A letter also violates 15 U.S.C. § 1692e(1) because it uses false representations or deceptive means to collect a debt. The Plaintiff asserts that the Defendant violated § 1692e(1) by (1) threatening criminal prosecution that could not be taken because the debt, as stated in the Exhibit A letter, is time-barred; (2) threatening prosecution despite the fact the Defendant "does not initiate criminal or civil action"; and (3) routinely charging a $5 fee when consumers pay by telephone.

The Court has already addressed these arguments above. The Court grants summary judgment to the Plaintiff on (1) and (2) because the Defendant used false or deceptive means to collect the debt by threatening criminal prosecution that could not be taken. The Court denies summary judgment to both parties on (3) because there is a genuine issue of material fact as to whether the Defendant was authorized to assess the $5 check-by phone fee.

*5. § 1692g: Validation Notice*

Plaintiff Kelly claims that the Defendant's Exhibit A letter violates §1692g of the Fair Debt

---

[3/] For example, the Defendant cites to Ohio Rev. Code § 955.14 to support its claim that debt collectors may assess a fee for a check-by-phone transaction. § 955.14, however, deals with a county's ability to increase dog and kennel registration fees and is totally inapplicable to the present litigation.

-12-

Case No. 1:07-CV-919
Gwin, J.

Collection Practices Act because it contains contradictory language stating that the debtor must make a payment within 10 days and also stating that the debtor has 30 days to dispute the debt. The Plaintiff says that the Defendant's 10-day notice overshadows or directly conflicts with the 30-day notice that is required by the FDCPA. 15 U.S.C. § 1692g. In response, the Defendant argues that the 10-day notice in the Exhibit A letter is required by state and municipal law and does not overshadow the FDCPA's 30-day notice provision.[4/] The FDCPA provides, in relevant part:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing . . .
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector . . .

15 U.S.C. §1692g.

The Sixth Circuit has noted, "Congress added § 1692g 'specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights.'" *Federal Home Loan Mortgage Corp. v. Lamar,* 503 F.3d 504, 509 (6th Cir. 2007) (citing *Swanson v. South Oregon Credit Service, Inc.,* 869 F.2d 1222, 1225 (9th Cir. 1988)). Pursuant to the FDCPA, "'notice of the thirty-day validation period is necessary, but not sufficient to satisfy § 1692g(a).' Instead, '[a] debt collector must "effectively convey" the notice to the debtor.'" *Id.* (citing *Smith,* 167 F.3d at 1054).

---

[4/] The Court notes at the outset that, even if the 10-day notice provision is required by Ohio law, any inconsistent state law requirements that provide less consumer protections than the FDCPA are preempted by the federal statute. *See* 15 U.S.C. 1692n (noting that the FDCPA does not "exempt any person . . . from complying with the laws of any State with respect to debt collection practices, *except to the extent that those laws are inconsistent with any provision of this subchapter,* and then only to the extent of the inconsistency") (emphasis added). *See also Romea v. Heiberger & Assoc.,* 163 F.3d 111, 118 n.10 (2nd Cir. 1998).

Case No. 1:07-CV-919
Gwin, J.

District courts evaluate whether validation notice is "effectively conveyed" by applying the least sophisticated consumer standard. *Id.* "The critical question is whether [the debtor] has been led to believe 'that [he] did not have thirty days in which to dispute the validity of the debt.'" *Id.* at 510. (internal citation omitted). The thirty-day validation notice "must be large enough to be easily read and sufficiently prominent to be noticed . . . [and it] must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Id.* at 511 (citing *Swanson,* 869 F.2d at 1225).

In this case, the Exhibit A letter sent by the Defendant to Plaintiff Kelly and the other class members contains a warning stating, "Pursuant to the prosecution office, you have 10 (ten) days after receiving this notice to make this check good . . ." [Doc. 1-1.] The letter also contains a notice at the bottom of the page that, in relevant part, provides, "If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. *Id.*

This Court concludes that a genuine issue of material fact exists as to this claim because a jury could reasonably find that the least sophisticated consumer, after carefully reading the Exhibit A letter, would be led to believe that she or he did not have thirty days to dispute the validity of the purported debt. A jury could also conclude that, even though the Exhibit A letter contains the FDCPA's required thirty-day validation notice, the notice is overshadowed by the Defendant's implicit threat that the consumer will be criminally prosecuted for failing to pay the debt within 10 days of receipt of the letter.[5/]

---

[5/] The Defendant vaguely argues that the Exhibit A letter was not its "initial communication" with Plaintiff Kelly and that the 30-day validation notice was not actually required under 15 U.S.C. § 1692g. The Defendant has
(continued...)

Case No. 1:07-CV-919
Gwin, J.

The Court therefore denies summary judgment to both parties on the validation notice claim.

### 6. § 1692g: The Cease and Desist Letter

The Plaintiff also says that the Defendant violates 15 U.S.C. § 1692g because it has a "normal practice" of ignoring cease and desist letters that request debt validation. The Plaintiff claims that his attorney sent a letter to the Defendant on March 22, 2007, asking the Defendant to cease and desist from further communication with Plaintiff Kelly and requesting validation of the alleged debt, but that the Defendant ignored this letter and continued debt collection efforts.

The FDCPA states:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . .

15 U.S.C. § 1692g(b).

In this case, the Defendant admits that it received a cease and desist letter from the Plaintiff's lawyer on March 22, 2007, but continued to send debt collection letters to the Plaintiff on March 26, 2007 and April 10, 2007. [Edelman Dep., Doc. 56-2 at 111; Doc. 56-3.] Edelman claims that the Defendant continued its collection efforts despite the request for debt validation because the Defendant has a "normal policy when we receive a letter from a third party and they're asking for a validation of a bill, especially because we're dealing with medical bills, we ask for written authorization from the patient to release this information." [Edelman Dep., Doc. 56-2 at 112.]

This Court, however, does not reach the issue of whether the Defendant was permitted to

---

[5]/(...continued)
not presented any evidence showing that a prior written notice regarding this particular debt was sent to the Plaintiff and thus a genuine issue of material fact arises that is sufficient to survive summary judgment.

-15-

Case No. 1:07-CV-919
Gwin, J.

require the debtor's written authorization for communication with his attorney. The Plaintiff was notified of his debt on February 13, 2007, but the Plaintiff's lawyer did not mail his cease and desist letter until March 22, 2007. Because this communication was not sent to the Defendant within the 30-day statutory validation period, the Defendant was permitted to continue its collection efforts for the previously undisputed debt. 15 U.S.C. § 1692g(b).

The Court thus grants summary judgment to the Defendant on the Plaintiff's claim regarding the cease and desist letter.

### *C. The Bona Fide Error Doctrine*

The Defendant vaguely asserts that, even if it has committed violations of the Fair Debt Collection Practices Act, that it should not be held liable because any violations of the statute were unintentional. § 1692k(c) of the FDCPA provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). The Sixth Circuit has explained that in order to establish the bona fide error defense, "The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional." *Lewis,* 135 F.3d at 402.

In this case, the Defendant fails to show by a preponderance of the evidence that its allegedly unintentional violations of the statute occurred despite the fact that it had procedures in place to avoid such error. Rather, the record suggests that the Defendant had very few measures in place to prevent unintentional violations of the FDCPA. The Exhibit A letter mailed to the Plaintiff stated the incorrect date and amount of the debt owed, but Defendant Montgomery Lynch had no procedure

-16-

Case No. 1:07-CV-919
Gwin, J.

to check the accuracy of the information contained in the letter before it was mailed to Plaintiff Kelly or the other class members. [Ianni Dep., Doc. 66-4 at 62-66; Thomas Dep., Doc. 66-6 at 48-51.] The check-by-phone prepared by the Defendant was presumably dishonored because the Defendant incorrectly used a different Plaintiff's account numbers than the numbers that Plaintiff Kelly gave Defendant, but the Defendant had no system in place to correct the mistake or to review the reason for the dishonoring of the check before it sent the Exhibit A letter to the Plaintiff. [Thomas Dep., Doc. 66-6 at 52-53, 60.] The Defendant assessed the Plaintiff a $5 telecheck fee, but apparently had no procedure for first obtaining authorization from debtors prior to imposing this charge.

The only substantive evidence that the Defendant presents in support of its bona fide error defense is its claim that it reasonably relied upon the City of Elyria's website that authorizes the 10-day validation notice on debt collection letters. [O'Connell Aff., Doc. 55-4.] Because the Plaintiff's validation notice claim survives summary judgment, the Defendant may present its bona fide error defense with respect to this claim at trial.

In all other respects, however, the Defendant has failed to show by a preponderance of the evidence that it is entitled to the FDCPA's bona fide error defense.

### D. The Plaintiff's Ohio Consumer Sales Practices Act (OCSPA) Claims

The Plaintiff also says that the Defendant's use of the Exhibit A letter violates §§ 1345.02 and 1345.03 of the Ohio Consumer Sales Practices Act ("OCSPA") by "knowingly committing unfair, deceptive, and/or unconscionable acts or practices." [Doc. 56-1 at 17.] The OCSPA provides that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.03(A). The statute defines a consumer transaction as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or

-17-

Case No. 1:07-CV-919
Gwin, J.

an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." § 1345.01(A). A supplier is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." § 1345.01(C). The Sixth Circuit has explained:

> While the definition of 'supplier' under the OCSPA is substantially broader than the definition of 'debt collector' under the FDCPA, the requirements of the statutes are similar . . . Thus, to determine whether Defendants are 'suppliers' under the OCSPA, this Court must ask essentially the same question that it must ask to determine whether Defendants are 'debt collectors' under the FDCPA: Did debt collection activities fall within Defendants' regular and usual course of business so that they were 'engaged in the business of' debt collection?

*Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir. 1999). "[V]arious violations of the FDCPA constitute a violation of the CSPA. . . [T]he purpose of both acts is to prohibit both unfair and deceptive acts and this court holds that any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03." *Becker v. Montgomery Lynch,* 2003 WL 23335929, at *2 (N.D. Ohio 2003).

Here, the Court concludes that the Defendant is a "supplier" of debt collection services within the meaning of the OCSPA because its debt collection activities constitute its ordinary course of business.[6] Numerous federal and state courts have concluded that debt collection activities promote consumer transactions and are thus covered by the OCSPA. See *Foster,* 463 F.Supp.2d at 809.

---

[6] The Defendant says that medical debts are exempt from the OCSPA under Ohio Rev. Code § 1345.01(A). The medical exemption in the OCSPA, however, "is narrowly construed, and Ohio courts have rejected its application to non-physicians. See *Summa Health Sys. v. Viningre,* 749 N.E.2d 344, 356 (Ohio Ct. App. 2000) ("While transactions with physicians are exempted from the CSPA, a transaction between a service provider such as a hospital and the consumer is not clearly exempted."); *Elder v. Fischer,* 717 N.E.2d 730, 734-35 (Ohio Ct. App. 1998) (holding that physicians were specifically excluded from the OCSPA, but hospitals were not so they must abide by the OCSPA). . ." *Foster v. D.B.S. Collection Agency,* 463 F.Supp.2d 783, 809 (S.D. Ohio 2006). Since Montgomery Lynch is not a physician, it cannot benefit from the physician-patient exemption under the Ohio Consumer Sales Practices Act.

-18-

Case No. 1:07-CV-919
Gwin, J.

Because Plaintiff Kelly has not presented any new evidence or arguments with respect to his OCSPA claims that have not already been discussed under the FDCPA analysis, the Court extends its analysis under the FDCPA to these present state law claims. *See Federal Home,* 503 F.3d at 513; *Passa v. City of Columbus,* 2007 WL 756703, at *5 (S.D. Ohio 2007); *Becker,* 2003 WL at *2. Insofar as the Court grants summary judgment to the Plaintiff on its FDCPA claims regarding the impropriety of the Defendant's threat to take legal action that could not be taken or was not intended to be taken, it also finds that the Defendant's threats of legal action violate the OCSPA. Ohio Rev. Code §§ 1345.02(B)(6),(10). Similarly, the Plaintiff's claim that the Defendant wrongfully attempted to collect the $5 check-by-phone fee under § 1345.02(B)(6),(10) survives summary judgment for the reasons previously discussed under the FDCPA analysis.

In all other respects, the Court grants summary judgment to the Defendant on the Plaintiff's remaining state law claims for the reasons discussed under the FDCPA analysis.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the parties' summary judgment motions. The Court **GRANTS** summary judgment in favor of the Defendant on the Plaintiff's claims regarding the $25 service charge and the cease and desist letter. The Court **GRANTS** summary judgment in favor of the Plaintiff on his FDCPA and OCSPA claims regarding the Defendant's threat to take legal action that was not intended to be taken or could not be legally taken and the Defendant's false representation that he committed a crime. The Court **DENIES** summary judgment on the Plaintiff's claims regarding the $5 check-by-phone fee and the

Case No. 1:07-CV-919
Gwin, J.

validation notice. Trial will proceed on the remaining federal and state claims on May 5, 2008.

    IT IS SO ORDERED.


Dated: April 15, 2008                      *s/     James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE